# O'Connor *v.* Chamberlain.

*The Statutory Separate Estate of a Married Woman.*

1. *The statutory separate estate of a married woman is purely legal.*—The statutory separate estate of a married woman is not an equitable but a purely legal estate, and can be charged only to the extent and in the manner prescribed by the law creating it.

2. *It can be charged only for articles of support for which the husband is liable.*—The liability of the husband for articles of comfort and support is an indispensable element of the right to charge the wife's statutory estate with the payment of them; and no order subjecting it to sale can be made unless it is based on a judgment in a suit against both of them, or is preceded by a judgment against the husband alone.

3. *If credit for necessaries be given solely to the wife, her statutory estate is not liable.*—The agency or consent of the husband is not material in fixing his liability to pay for necessaries furnished his wife; but if the credit be given solely to the wife, in exclusion of all liability of the husband, no recovery can be had against him; and an indispensable element of a charge against the statutory estate of the wife is wanting.

4. *A court of equity can not impose on it burdens not imposed by the statute.* The liability of the statutory estate of a married woman is fixed by law, and a court of equity is as powerless as a court of law to dispense with the requirements of the statute, or to subject it to burdens beyond what the statute imposes.

APPEAL from the Chancery Court of Jefferson.
Heard before the Hon. CHARLES TURNER.
The facts are contained in the opinion.

WATTS & SONS, and PHELAN & CLARKSON, for appellant. 1. It is a general rule, when a statute creates a liability unknown to the law and provides a remedy, the remedy thus provided is exclusive. But there is an exception to the rule. It is when the statute creates a new liability and provides no remedy or an inadequate one, then the courts of law and equity furnish an appropriate remedy according to the nature of the case.—32 Ala. 703; 49 Ala. 507; 15 Ill. 9; 14 ib. 83; 11 Bush, (Ky.) 538; 9 Johns. 507; 5 Mass. 514; 10 Pick. 383; 25 Ala. 644; 13 Barb. 217.

2. Under the statute of 1850 (woman's law), which uses language similar to section 2376 of the Revised Code, it was held that the wife could be sued at law after the death of the husband.—25 Ala. 644. The case of *Carter v. Wann,* 45 Ala. 343, is not in conflict with *Cunningham v. Fontaine,* in 25 Ala. 644, although overruled by Judge PETERS. The

Code fixes no personal liability on the wife for such contracts, and only fixes a liability on her separate estate.—31 Ala. 438; 32 Ala. 599. And the suit against the wife at law is not *in personam*, but *in rem.*—52 Ala. 161. *Carter v. Wann* overrules *Cunningham v. Fontaine, supra,* but it is erroneous.

3. The wife 'has the right to make the contracts, provided the articles bought are such as the Code describes. It matters not who buys or makes the contract for such things as are covered by the statute.—31 Ala. 438; 35 Ala. 653; 52 Ala. 161; *Janney v. Buel,* 55 Ala. 408. If the husband dies before the account is due, is the property of the wife (which the statute makes liable) to be absolved from all liability because the husband dies before a suit at law can be brought? Such a construction of the law would be not only unjust, but absurd. Under the circumstances the remedy is in equity to enforce a liability which the statute fixes on the property of the wife.—1 Story Eq. Jur. §§ 32, 33.

4. The fundamental doctrine is where there is a right recognized by law, and no plain, adequate and complete remedy at law, a court of equity will give the appropriate remedy for the enforcement of the *recognized right.* Here the statute recognizes the right—the *liability of the wife's estate to pay the contracts named in the statute.* The remedy at law is not adequate or complete—in fact there is no remedy provided by the statute for the enforcement of this recognized right when the husband or wife dies before the enforcement of this right.

5. Cord, in his work on "Legal and Equitable Rights of Married Women," says "that the charge against such estates can only be enforced in equity, unless the statute provides a remedy at law—§§ 333, 319, 335. The remedy against her estate existed before the statute. And giving the remedy at law does not take away the equitable remedy, unless in the statute there are words of prohibition or restriction.—28 Ala. 629. In equity, when the wife has a separate estate, and the contract was for her benefit, or the benefit of her estate, the separate estate was subjected to the payment of the contract. 22 Barb. 371; 18 N. Y. 265.

6. In Alabama, the whole separate statutory estate of the married woman is charged by the statute with the certain contracts described in the statute; and a remedy has been provided at law, by the statute, but this does not deprive equity of its jurisdiction, when the remedy thus provided is inadequate, or where it becomes impossible of enforcement at

[O'Connor v. Chamberlain.]

law by the death of either husband or wife.—37 N. Y. 35 ;
7 Paige, 112.  In this case the facts show that Mrs. Cham-
berlain made the contracts ; they were for such articles as
the statute fixes liability on the separate estate for the pay-
ment of.  The contracts were made by the wife herself on the
·faith of the separate estate.  Equity will not permit the death
of the husband to extinguish this clear liability.

W. S. ERNEST, and R. H. PEARSON, for Appellee.—1. The
bill is without equity, and should be dismissed because it shows
on its face that the property sought to be charged is the
statutory separate estate of the wife.  It also shows that the
goods were sold to the wife *alone,* and the husband was not
charged or looked to for payment in any event.  But it was
expressly understood that the husband was not to be held for
the payment of the account.

2. If the appellant has any remedy, it is by an action at
law—upon the principle that upon the death of the husband
the right of action survived against the wife.—25 Ala. 644.
But it is settled that this right of action against the wife does
not survive.—45 Ala. 443 ; 51 Ala. 245.

3. The death of the husband before suit, confers no juris-
diction on a court of chancery.  The right to subject the
separate estate for articles of comfort and support did not
exist at common law ; it is given only by the statute.—*Short
v. Battle,* 52 Ala. 456.   The wife, at common law, can not bind
herself or render her separate estate liable.   When such a
power is given, it is only to the extent conferred by the act,
and being in derogation of the common law, must be strictly
construed.—9 Ala. 43 ; 20 Ala. 180 ; 30 Ala. 591.

4. The only remedy for enforcing this statutory right, is·
by suit at law against the husband alone, or against the hus-
band and wife jointly.—Code, § 2376 ; 45 Ala. 443 ; 51 Ala.
245 ; 34 Ala. 512.   The death of the husband confers no
right upon a creditor to go into equity.   Nor will the court
take jurisdiction upon the ground that " where there is a
right there is a remedy," for there is no right apart from the
statute.—Authorities *supra,* and *Short v. Battle,* 52 Ala. 456.
This right and this remedy must go together.   One can not
exist without the other.

5. The bill shows that a large part of the account sued
upon is for wearing apparel for the husband.   Such articles
are not a charge upon the estate.—31 Ala. 438.   It shows
also that the goods were sold to the wife alone, and by ex-
press agreement the husband was not to be looked to for the
·(29)

payment of the account. Since this is true, the husband could never have been responsible for the payment for the goods; and the bill should have been dismissed on this ground.—34 Ala. 496.

BRICKELL, C. J.—The original and amended bill filed by the appellant, in substance allege, that the appellee in 1872 and 1873, a married woman, wife of one Charles Chamberlain, since deceased, contracted on her own credit, and on the faith of her statutory separate estate, an account with appellant for articles of comfort and support of herself and family. The husband had no property or credit, and the credit was given wholly on the faith of the statutory separate estate of the appellee. The prayer is, that the estate of the appellee be subjected to the payment of the account, and for general relief. A demurrer was interposed, assigning for cause a want of equity in the bill, which was sustained, and the bill dismissed. From the decree, this appeal is taken.

The statute declares a liability on the separate estate of a married woman, which it creates, "for articles of comfort and support of the household, and for the tuition of the children of the wife, suitable to the degree and condition in life of the family, and for which the husband would be responsible at common law."—Code of 1876, § 2711. The construction of this provision, adopted soon after its enactment, and which has since been adhered to steadily, is, that fixing a liability on the husband is an essential, indispensable element of the liability of the statutory estate.—*Durden v. McWilliams*, 31 Ala. 438; *Ravisies v. Stoddart*, 32 Ala. 599; *Eskridge v. Ditmars*, 51 Ala. 245. The necessities of the wife, or of the family, may be supplied under circumstances not imposing on the husband responsibility to answer to the person who assumes to supply them. The wife may elope, though it be not with an adulterer, and the husband is not chargeable with necessaries, unless he receives her back again. The separation puts all persons on inquiry, and at their own peril, they give her credit. Other instances in which her necessities may be supplied, without fixing liability on the husband, readily occur to the professional mind.—2 Kent, 132. The absence of his responsibility is as fatal to a recovery of, or against the estate of the wife, as would be the absence of the specific consideration the statute expresses—*articles of comfort and support of the household or the tuition of the children of the wife*. Neither the words or the policy of the statute would be satisfied by any other con-

struction.   The only judgment which can be rendered so far as the wife or her estate is concerned, is a judgment condemning the estate to sale; and this judgment can not be rendered, unless it is accompanied, or preceded by a personal judgment against the husband.   The liability of the estate is "to be enforced by action at law against the husband alone, or against the husband and wife jointly," are the words of the statute.   And if the suit is against the husband alone, judgment must be obtained, and execution thereon returned *not satisfied*, before any proceeding can be had against the statutory estate of the wife.—Code of 1876, § 2712.   The liability of the estate is therefore dependent on the liability of the husband.   Nor does the statute assume to impose on the husband a liability which does not exist without it.   It is the *common law liability of the husband* which is to be enforced, and not another new and distinct liability, as is directly expressed by the words " for which the husband would be responsible at common law."

The bill avers the articles purchased by the wife, were for the support and comfort of the household—in other words, they were necessaries, which at common law, the wife had an implied authority to purchase, or which in the absence of a proper provision for her maintenance, a stranger could have supplied to her on the credit of the husband.   A duty of the husband imposed by the common law, which the statute does not lessen or modify, is to maintain the wife suitably to her situation and to his condition in life.   It is this duty and the liability consequent upon it, to which the statute refers, when it declares the contracts for necessaries for which the statutory estate is liable, are such as the husband would be responsible for at common law.   If the husband is without fortune, what are necessaries must be graduated to the degree of the wife's fortune, and to her social position, and to this extent only, it may be in some cases, the statute will enlarge the liability of the husband as defined at common law.   The statute intends that the measure of the husband's liability is ascertainable not as at common law from the degree of his fortune only, but from the degree of that fortune, and the degree of the wife's statutory estate, of which he is trustee, and to the rents, income, and profits of which he is entitled.   The agency in making the contract is not, as it was not at common law, material.   The husband or wife, separately or jointly may enter into the contract—or, without contract with either, a stranger may supply the wants of the wife, and a liability against the husband,

and against the statutory estate arises by operation of law. The liability of the husband from the common law—the liability of the estate, from the statute. The husband was at common law, and is yet, presumed to assent to and authorize the wife to purchase necessaries, and becomes liable on her contracts of which they are the consideration. Or he may have dissented from, or even forbidden such contracts, yet he would be liable, if the seller could show that the things purchased were absolutely necessary to the comfort of the household.—2 Kent, 146 ; *Hughes v. Chadwick,* 6 Ala. 651 ; *Zeigler v. David,* 23 Ala. 127 ; *Pearson v. Darrington,* 32 Ala. 227. But though the wife be living with the husband, if on her own credit, or to the express exclusion of the credit of the husband, she obtains necessaries, the husband is not liable.—2 Kent, 146 ; 2 Bright, Hus. and Wife, 17 ; *Pearson v. Darrington supra.* The complainant not having extended credit to the husband, extending it alone to the wife, and to use the language of the bill, *upon the faith and credit of her separate estate,* excluding expressly the credit of the husband, the element of his responsibility, essential to the charge of the statutory estate, the statute declares, is wanting. Courts have no power to dispense with any element of a statutory charge or liability. If the liability of the husband could be dispensed with,—the specific meritorious consideration of the contract for the satisfaction of which the charge on the estate is created, could as well be dispensed with, when that liability existed, and this consideration was wanting. If in an action at law against husband and wife, the facts were stated in the complaint, which are stated in the bill, negativing responsibility of the husband, the complaint would be demurrable, and the action could not be supported. It must be borne in mind, that the liability of the estate is purely statutory—having no existence independent of the statute, which defines and declares, and bounds and circumscribes it, by its own rules and limitations, and the courts can not extend it. An extension of it, to contracts for which the husband is not responsible would not only violate the words, but would be inconsistent with the policy and spirit of the statute. Husband and wife remain, in a large sense, as at common law, but one legal person, the existence and authority of the wife being merged in that of the husband, the duties of the husband and his authority as the head of the family and the protection of the wife, are not lessened, but are preserved. The duty of maintaining her, and the family still devolving on him, the corresponding right to keep her maintenance and that

[O'Connor v. Chamberlain.]

of the family within the limit of necessaries—of adapting the domestic expenditures to the situation and condition in life of the family, is not disturbed. Nor could it be disturbed, without disturbing the harmony of the relation, and inviting dissension, and contracts involving inconsistent obligations. The property of the wife rests in the husband as trustee, and and he has the right to manage and control it without liability to account for the rents, income, or profits.—Code of 1876, § 2706. The rents, incomes and profits, are thus donated to him by law, and are freed from liability for his debts. The purpose of the donation is, to enable him to discharge the duty of maintaining the wife and family, and to avoid the causes of litigation, which must arise, if he was liable to account for them as trustee. If contracts for necessaries could be made by the wife, which do not involve him in liability, and the estate charged with their payment, his authority as husband would be invaded, and his right, duty and authority as trustee, could not only be impaired, but destroyed, in violation of the spirit and policy of the statute. The husband may be insolvent, and without credit, but neither lessens his rights or his duties. And if because of his insolvency, others assume to enter into contracts with the wife, on the credit of her statutory estate, to the exclusion of his responsibility, they make a contract the statute does not charge on the estate. The case made by the bill can derive no aid from the statute, if in any event, a court of equity would have jurisdiction to enforce the statutory charge.

It is insisted however that the wife has capacity to bind her statutory estate, by her own contracts for necessaries, and a court of equity has original inherent jurisdiction to enforce such contracts against the estate. The incapacity of the wife to contract, at common law, was general and absolute, not arising from any want of discretion, "but because she has entered into an indissoluble connexion, by which she is placed under the power and protection of her husband, and because she has not the administration of property."—2 Kent, 150. In *Murray v. Barlee*, 3 Myl. & K. 209, (9 Cond. Eng. Ch. 7), said Lord BROUGHAM, "that at law a *feme covert* can not in any way be sued, even for necessaries, is certain. Bind herself or her husband, by specialty she can not; and although living with him, and not allowed necessaries, or apart from him, whether on an insufficient or an unpaid allowance, she may so far bind him, that those who furnish her with articles of subsistence may sue him, yet even in respect of these she

herself is free from all suit.    This is her position of disability,
or immunity at law; and this is now clearly settled.    Her
separate existence is not contemplated; it is merged by the
coverture in that of the husband; and she is no more recog-
nized than is *cestui que trust,* or the mortgagor, the legal
estate, which is the only interest the law recognizes, being
in others."    In a court of equity however the rule is differ-
ent.    The separate existence of a wife, so far as property
given or settled to her separate use is concerned, has long
been recognized.    From her capacity to take and hold such
property, sprung another doctrine; that if not restrained from
alienation, her power to contract in reference to it, or to
bind it, was an incident to her ownership.    The concurrence
or consent of her husband to the alienation or contract was
not required—the whole principle resting on the theory
that as to such estate in equity she was deemed a *feme sole.*
1 Lead. Eq. Cases, 687 (4th Am. ed.)    In some of the courts
of this country, it is held, that the power of the wife over the
estate settled to her separate use, is derived from and depen-
dent upon the grants expressed in the settlement; and "that
instead of having every power from which she is not nega-
tively debarred in the conveyance, she shall be deemed to
have none but what is positively given or reserved to her."
This is not however the doctrine of the English Court of
Chancery, which was at an early day adopted and has since
prevailed in this state.    If the settlement contains no restraint
or limitation, the capacity of the wife to contract, binding
her separate estate is an incident of ownership, and as un-
limited as if she were a *feme sole.—Gunter v. Williams,* 40
Ala, 561; *Paulk v. Gillespie,* 34 Ala. 541; *Barker v. Barker,*
32 Ala. 473; *Bradford v. Greenway,* 17 Ala. 797; *Forrest v.
Robinson,* 4 Port. 44; *Collins v. Rudolph,* 19 Ala. 616.    But
if the settlement expressly limit the power of alienation—if
it is confined to particular uses or to a particular mode of
disposition, the wife has only the power which is conferred,
and it must be exercised for the uses, and in the mode pre-
scribed.    The fallacy of the proposition we are considering,
lies in the supposition that the statute creating the separate
estate of the wife, creates an estate analogous to that of the
equitable separate estate, and that alienation is an incident
of the ownership which it confers.    The purpose of the stat-
ute, is obviously more *to disable* the husband, than *to enable*
the wife; and with the exception of freedom from liability
for the debts of the husband, and security of title to the wife
against his disposition or alienation, the estate created, has

[O'Connor v. Chamberlatn.]

no feature or quality in common with that of the equitable estate of the wife.

The statutory estate is not an *equitable*, but a *legal* estate. Courts of law are bound to its recognition, and the wife, if compelled to resort to legal remedies for its recovery, can pursue them only in her own name. Or, if the estate is claimed adversely, an action at law for its recovery must be prosecuted against her alone.—Code of 1876, § 2892. The husband has no authority to receive the equitable estate of the wife, without consent or concurrence; but the statute confers on him such authority as to her statutory estate, and his receipt in which she does not unite, nor to which she yields assent, "is a full discharge in law and equity."—Code of 1876, § 2710. The value of the statutory estate, but not of the equitable estate, is subtracted from the value of her dower in the lands, and her distributive share in the personal estate of her husband, if she survives him. The husband may be tenant by the curtesy of her equitable real estate, but can take no interest in her equitable personal estate, if he survives her. Of real estate, the statutory estate, whether there is or not issue born alive of the marriage, the husband surviving, takes an estate for life, and takes one-half of the personal property absolutely, if the wife dies intestate. The wife may contract with the husband in reference to her equitable estate, and may alien or give to him the same interest as to any other person.—1 Lead. Eq. Cases, 690; *Barker v. Barker*, 32 Ala. 473. Contracts by which the wife aliens, or gives to the husband her statutory estate are prohibited. Code of 1876, § 2709. Without the concurrence of the wife, the husband can not by any contract, not even for necessaries create a charge on the equitable separate estate. The statutory estate is charged with liability for necessaries, though it is the debt of the husband, and he is the agent in contracting it, and the wife is without capacity by her dissent to avoid the charge. There is manifestly but little analogy between the equitable and statutory estate. The latter is the creation of the statute, and its quality and incidents must be measured and ascertained from the terms of the statute.

We repeat that it is obvious while the purpose of the statute is in some respects *to enable* the wife; its larger sphere and operation is to *disable* the husband. Ability is conferred on the wife to take and hold property, and the husband is disabled by any act of his own, by reduction into possession or otherwise, or by the operation of common law principles, from acquiring title to her property, or property

accruing to her during coverture.    To this extent, the statute
*enables* the wife, and *disables* the husband.    Dominion over
the property; capacity to enjoy it separately from and inde-
pendently of the husband—the power to dispose of, or to
charge it, or personal capacity to contract, is not conferred
on the wife, but studiously avoided.    The objects of the
statute would more often have been defeated than accom-
plished, if such dominion and capacity had been conferred.
The preservation of the property to the wife, whatever may
be the faults or misfortunes of the husband, by securing to
her the title, and relieving it from liability for his debts, is
the scope and operation of the statute.    The surest method
of preserving it, while conferring on her ability to take and
hold, it seemed to the legislature, was, to withhold from her
power to dispose of, or to charge it; leaving to the husband
as her protector, and trustee, the power to receive, manage
and control it, and to take the rents, income and profits.
Power to alienate it is conferred on husband and wife, and
the mode of alienation is prescribed, thereby negativing any
other mode.—*Smyth v. Oliver*, 31 Ala. 39; *Whitman v. Aber-
nathy*, 33 Ala. 160; *Alexander v. Saulsbury*, 37 Ala. 375;
*Patterson v. Flannagan*, ib. 513; *Warfield v. Ravisies*, 38
Ala. 518.    It was said in *Durden v. McWilliams*, 31 Ala.
443, that independent of the statute, the wife had in equity,
power to charge her statutory estate.    The remark was inci-
dental, and not at all necessary to the decision of any ques-
tion, the case presented.    In the subsequent case of *Cowles
v. Morgan*, 34 Ala. 537, the court said that it would not
regard itself as trammelled by the remark, when the ques-
tion should arise.    The question did arise, and was carefully
considered in *Warfield v. Ravisies*, 38 Ala. 518, and the
conclusion reached and announced, was that the wife, " so
long as her husband continues her trustee, can not convey or
charge her estate, unless she conform to the requirements of
the statute."    The suit was in equity to charge the statutory
estate, with the payment of a promissory note executed by
husband and wife.

If the estate of the wife under the statute bore a closer
analogy to an equitable estate—if we could resort to the
doctrine of a court of equity in reference to that estate, to
guide us in passing on the power of the wife, her capacity to
alienate, or by contract to bind the estate in any other mode
than by an instrument in writing in which the husband
joined, and which was attested or acknowledged as the stat-
ute directs, could not be deduced.    It is only when her

[Gillespie v. Nabors.]

power of alienation is not limited or restrained, that she has a general capacity to bind her equitable estate. When alienation is restrained to a particular mode, or confined to particular uses, the mode must be pursued, and the uses observed. We are satisfied in any aspect of the case, the decree of the chancellor is correct, and must be affirmed.